v. Town Council of Highland, Indi The next case for argument this morning is Chosen Consulting v. Town Council of Highland, Indi number 24-2714. Good morning, Your Honors. Just one second, please. Okay. Good morning, Mr. Brannick. Good morning. Matthew Brannick, representing plaintiffs' appellants. I'll refer to them as the chosen entities. I will do my best to reserve two minutes for rebuttal. May it please the Court, this appeal involves a matter of statutory construction. It can be answered with one question. Do Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act contain an exhaustion of remedies requirement as a precondition to filing suit for disability discrimination? The chosen plaintiffs contend that no exhaustion requirement exists under these statutes, and a majority of courts considering the issue, including several within the circuit, agree. Based on the plain text of Title II of the ADA and Section 504 of the Rehabilitation Act, there simply is no exhaustion requirement. But, counsel, we're talking about zoning here. And there's another way to look at this, not just whether there's an exhaustion requirement in general under the ADA. But, say your clients had decided, you know, we're not getting what we want, and we're going to file suit. We're going to go and not just ask for a letter, we're going to follow what state law requires. Could you come in here and seek federal relief, or would younger abstention be appropriate? I don't think younger abstention would be appropriate in this situation. Chosen is actually seeking two-fold relief here. So, certainly, Chosen could have run the administrative appeal to ground through the appeal process. And that's what I'm asking. If you had done that, wouldn't we have a younger problem? I don't think so, because you still have disability discrimination on the part of the town of Highland, the town in this particular instance. And so the relief that Chosen is seeking, certainly it could receive the zoning letter that it requires. But how is there any damages that are flowing from that until there's a final zoning determination? Well, I think what you would see is from the moment, I mean, this court, certainly in Discovery House, indicated that a for-profit entity like Chosen cannot obtain lost profit damages. Because, in the words of this court, those damages wouldn't inure to the benefit of the residents or the sufferers of addiction-related disorders that Chosen serves. However, the Discovery House decision left open the question, because it wasn't before the court in Discovery House, whether associational standing would exist in the injunctive relief context. So, Judge Kolar, what you would have in this case is Chosen is also seeking a permanent injunction to enjoin the town from further limiting or trying to prevent Chosen from operating this facility as a sub-acute facility under Indiana law as a rehab center. So that's why this two-fold relief is here. And the only thing standing in the way, my understanding of the record, is that you need to have something that you can send to the state regulator saying this is a legal zoning use. And there's a zoning process that could give you that. Right. But then, we're not just seeking the letter or a zoning appeal or a zoning decision. We are also seeking to hold the town council accountable for its discriminatory conduct. That really is the purpose and intent of ADA and the Rehabilitation Act. And so that's the permanent injunction piece as Chosen sees it. And how is that not enjoining of something they haven't done? I mean, there is no final decision. You asked for a letter, you didn't get a letter. So Chosen would respectfully disagree with that. There has been a decision in the deposition testimony of Councilman Herrick. Councilman Herrick indicated that the town council president at the time, Mark Schocke, browbeated the town attorney into changing the legal opinion that the town attorney, John Reed, had issued. And of course, the legal opinion said precisely what Chosen maintains here. Chosen does not need a variance because Chosen has a legal non-conforming use to operate this property as a nursing home. And of course, I'm using the definition of nursing home, which is quite broad. And broad enough, we would contend. And the town attorney at that time agreed. But isn't what's really at issue whether or not there's a legal non-conforming use? And the letter, the not issuing of the letter doesn't answer that question. I think to have the legal non-conforming use, the town only changed its opinion and went back on that and started to look at... But you have other avenues. Why didn't you file a declaratory judgment action in state court asking them to resolve the legal non-conforming use? Because we can't... A claim is not ripe for us to hear unless there's a final decision. Well, as I indicated, what we do have here is a final statement of what that decision would be. But you don't have a final determination about non-conforming use. Well, I think that... Which is what would trigger your disability. Right. Well, what the town is saying is... I would frame it in terms of a pretext. So the town has gone back on what its initial opinion was, which was you have a legal non-conforming use. The town doesn't disagree with that in its briefing in this very case. We have a legal non-conforming use. What they're saying now is that we need a use variance, which is a very different thing under the zoning code. So the fact that... But following up on that, how is that decision final? How are you saying that the town ever made that decision? There's a process for zoning decisions. There may have been a draft letter at one point, but that's not a decision. It may not be a decision, but it is certainly a statement. But we need a final decision. That's the challenge here. Not from an exhaustion standpoint, but from a ripeness standpoint. Right. And I think it sounds, Judge St. Eve, like the court is troubled a bit by what we would call the Williamson test. Yes. For due process claims. I wouldn't say troubled, but I think you have a hard time getting around Williamson here. I think the issue with the Williamson test, why it is inapt for a case under Title II of the ADA, for example, is the discrimination is part and parcel of the zoning process here. The fact that Chosen is being required to seek a variance that it does not need under the town's own ordinances is part and parcel of the discrimination. And to require Chosen to further go through that process, run this to ground through the BZA, and I should also indicate that for a use variance, precisely what the town is now saying Chosen needs, the final arbiter is the town council. So all roads lead back to the town council under their ordinances. Certainly the BZA recommends and provides a favorable or unfavorable recommendation. However, the town council is the final arbiter. So we already have a decision. It was made in an executive session. Councilman Herrick indicated that in his deposition testimony and tried to walk that back. So we know that all roads lead back to the town council, and they have indicated they do not want this facility operating because they don't want drug addicts walking the neighborhood. And so for a due process claim or a takings claim in the think we're seeking diminution in value of our property because of a zoning decision, those are the cases similar to River Park. This court was correct in River Park. What processes was due. I'll try to save my time. Thank you, Judge. Mr. Overbold. Good morning. This case is not about whether Title II of the ADA contains an exhaustion requirement. We've never argued that. That's not the issue. The issue, as you pointed out, Judge, is whether or not this claim is right. And the answer is it's not. I think the exhaustion confusion may have come in from some of the language of the district court opinion. That could be. I don't disagree with that. But at this point, there's one thing that the plaintiff needed to do. They needed to go and file and get a decision in front of the BZA. Now, opposing counsel has said, well, all roads lead to the town council. Well, that's not quite true. While it's true that administratively the town council would make a final decision, there's judicial review. So the final decision about whether or not Chosen would be allowed to operate its facility wouldn't be made by the town council if Chosen wanted to challenge it. What if they had gotten a final decision on the legal nonconforming use by going to state court? Would that be sufficient for ripeness? Yes. Because it seems like that's an avenue they could have pursued. Their argument, they don't want to come back to the board because they're biased and they know how it's going to end up. But it seems like they had another avenue that would make the claim ripe. That's absolutely right. Do they have to exercise that right of going to the state courts for a review of what the town's done? Well, if they went to the town and the town granted them the relief they sought, then that would end it. That would end it. But if they didn't get the relief? Then I think they would have to go to court to have judicial review of that decision. And that's what happened in Discovery House. In Discovery House the methadone clinic that wanted to open had their request denied at the administrative level. The trial court affirmed the administrative decision and the court of appeals reversed it. It was at that point that Discovery House went to federal court with their ADA claim. So that avenue, for reasons that completely escape me, has never been pursued by Chosin. Chosin was all but, it was strongly encouraged I would say, by the district court's decision on the motion for and we were all waiting for them to go do it. And they never did. And this court has said time and again, in cases like River Park, that you have to exhaust. That because of prudential standing limitations dealing specifically with cases involving land use, that's what you need to do. We want property owners to pursue their state remedies. And that is a common practice throughout the country. I've identified other circuits that have said exactly that. They have a rule very similar to what the Seventh Circuit does regarding prudential standing. That prudential standing requirements for land use cases require that you exhaust before you go to court. This court also has imposed a rule like that when it comes to state and local taxes. In the All Can case, this court did something very similar. It said that in the state court tax context, we want petitioners to go and exhaust their state law remedies before proceeding to federal court. And what I see almost entirely lacking in the briefing from Chosen is addressing this idea of prudential limitations on standing. They just want to ignore that. And I think under River Park and the other cases we've cited, that's an error. They need to go back and exhaust their remedies. Quite frankly, Your Honor, that's all I really have. If the court has specific questions for me, I am happy to answer them. Thank you, Counsel. Mr. Brannick. Thank you, Your Honors. I'll just hit a couple of very quick points. First of all, my friend indicated that Chosen needs to go to the Board of Zoning Appeals. Well, they don't. Not under the town's own ordinances. I'm quoting from 18.05.060L. A use existing at the date of adoption shall be without further action of the town council, zoning administrator, or BZA a legal use. 18.115.050E. Quote, approval of a use variance is unnecessary for a use that existed on the date of adoption or amendment of this title. Of course, Chosen's use existed at the date of adoption. So when this town says you need to seek a variance, it is part and parcel of the discriminatory conduct that they are perpetuating. I would point out that a judicial review process, much like going before the BZA, these bodies are not equipped, a court sitting in judicial review of a BZA decision is in no way equipped or empowered to rule on a disability discrimination claim under ADA. ADA is different. And as far as prudential standings concern, I would agree prudential standings should exist if this were a due process claim or a takings claim. But it is not. It is a claim under Title II of the ADA and Section 504 of the Rehabilitation Act. And under both statutes, Congress has not injected or written an exhaustion requirement. The last thing I'll say is that ALCAN involved the Tax Injunction Act, which was specifically based on comedy concerns, the exact opposite of what ADA is. Thank you, Judge. The Court will take the case under advisement.